Robert L. Starr (183052)
robert@starrlaw.com
THE LAW OFFICE OF ROBERT L. STARR, APC
23901 Calabasas Road, STE #2072
Calabasas, CA 91302
Telephone: (818) 225-9040
Facsimile: (818) 225-9042

Attorneys for Plaintiff
Makele Hill and others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAKELE HILL, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**1. VIOLATIONS OF BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.**<br><br>**2. VIOLATION OF BUSINESS AND PROFESSIONS CODE § 1750, ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Makele Hill hereby brings this class action on behalf of herself, and all others similarly situated, against Defendant BMW North America, LLC ("BMW"). This action is based on personal knowledge relating to Plaintiff's own actions, matters of public knowledge, as well as on information and belief based on the investigation of counsel.

## INTRODUCTORY ALLEGATIONS

1) This matter arises from Defendant BMW's willful failure to tender a statutorily compliant California emissions warranty for the following vehicles: All BMW vehicles subject to the California emissions warranty which are equipped with

-1-

1  a Low-Pressure Fuel Pump assembly bearing part number 16117319502, as well as

2  all superseded and superseding part numbers (Low-Pressure Fuel Pump) wherein

3  BMW has failed to provide 7-year 70,000-mile California emissions warranty

4  coverage. It is Plaintiff's present information and belief, subject to confirmatory

5  discovery, that the Class Vehicle definition embodies 2011 through 2017 BMW X3

6  vehicles and 2014 through 2017 BMW X4 vehicles equipped with the Low-Pressure

7  Fuel Pump. It is Plaintiff's information and belief, subject to confirmatory discovery,

8  that starting in 2018, BMW began providing 7-year 70,000-mile California emissions

9  warranty coverage for BMW X3 and BMW X4 vehicles equipped with the Low-

10  Pressure Fuel Pump. The Class Vehicle definition includes BMW vehicles

11  distributed and registered in the State of California and BMW vehicles distributed

12  and registered in states that have adopted the California emissions warranty pursuant

13  to Section 177 ("Reg. 177") of the Federal Clean Air Act, 42 U.S.C. § 7507.[1]

14      2)  The relevant statues at issue involve California Code of Regulation ("CCR"),

15  Tit. 13, §§ 2035 and 2037. These statutes require all vehicle manufacturers to

16  provide a "statutorily compliant" general emissions warranty in conjunction with the

17  sale of any new motor vehicle in the State of California.

18      3)  In order for a California emissions warranty to be "statutorily compliant," the

19  emissions warranty must provide coverage for a period of three (3) years or 50,000

20  mile, for defects "which cause the failure of a ***warranted part*** [or] which would

21  cause the vehicle's ***on-board diagnostic malfunction indicator light to***

22  ***illuminate***[.]" [13 CCR § 2037(b)(2) (emphasis added)].

23      4)  As defined by the Regulations, a "warranted part" includes any part whose

24  malfunction causes the vehicle's Malfunction Indicator Light ("MIL") to illuminate.

25  Importantly, if a defective component causes the MIL to illuminate, the CCRs still

26

27  [1] As used herein "California emissions warranty" refers to the extended emissions
   warranty regulations set forth in 13 CCR § 2035 *et. seq.* and its identical federal
28  analogue under Section 177.

1  categorize the component as a "warranted part" even though the primary function of
2  the defective component is not directly related to emissions control. [13 CCR §
3  2035(c)(2)(B)].

4   5)  However, when the part is considered to be a "high-priced" warranted part, the
5  manufacturer must extend the emissions warranty from three years or 50,000-mile, to
6  seven year or 70,000-mile. [*Id*. at § 2037(b)(3)].

7   6)  A "high priced warranted part" is defined as a "warranted part" whose
8  individual replacement cost at the time of certification exceeds the annual average
9  nationwide urban Consumer Price Index ("CPI") for the calendar year two years
10 prior to the model-year for which the cost limit is being calculated. [*Id*. at §
11 2037(c)(3)].

12  7)  As an important aside, the strictures of CCR §§ 2035 *et seq.* also apply to all
13 Reg. 177 States because, by necessity, Congress requires that any state which adopts
14 Reg. 177 to also "adopt and enforce" standards that are identical to those of
15 California. In other words, by necessary implication, Reg 177 states have adopted
16 California Code of Regulation ("CCR") §§ 2035, *et. seq*.

17  8)  Relevant to the instant case are the Class Vehicles' Low-Pressure Fuel Pumps.
18  9)  Pursuant to 13 CCR § 2037(b)(2), the Low-Pressure Fuel Pump has been
19 legislatively categorized as an "emissions-related" part because a defect or failure of
20 the Low-Pressure Fuel Pump will cause the "check engine" light to illuminate; will
21 cause the vehicle to fail a smog check; and will cause an increase in "regulated"
22 greenhouse gas emissions.

23  10)  Importantly, because the Low-Pressure Fuel Pump is an "emissions-related"
24 part "which affects regulated emissions," it must also necessarily be classified as a
25 "warranted part" pursuant to 13 CCR § 2035(c)(2)(B).

26  11)  As alleged in greater detail below, not only is the Low-Pressure Fuel Pump a
27 "warranted part," but it is also a "high-priced" warranted part whose repair or
28 replacement is statutorily entitled to an extended 7-year 70,000-mile warranty.

12)   Yet, in an effort to minimize its warranty costs, Defendant BMW has unilaterally and unlawfully disregarded the foregoing statutes by limiting the parts it designates as "high-priced" emission parts covered under the extended 7-year 70,000-mile statutory emission warranty. These parts include, but are not limited to, the Low-Pressure Fuel Pump.

13)   In other words, in order to minimize its warranty exposure, BMW limits the parts that should be covered under its statutorily mandated emissions warranty, and when these parts go bad, instead of covering these repairs under warranty as required by statute, BMW refuses to provide coverage, and sticks the consumer with the bill.

14)   As a result of its systematic refusal to pay for repairs associated with a warrantable defects entitled to coverage under California's extended statutory emissions warranty, BMW has unlawfully required Plaintiff Makele Hill, and thousands of other consumers, to pay out-of-pocket for repairs which should have been conducted free of charge under California's extended statutory emissions warranty.

15)   BMW's unlawful is not limited to California, but actually extends vehicles distributed in Reg. 177 States, as well.

16)   Plaintiff, on behalf of herself and all others similarly situated, seeks redress for BMW's egregious violations of California law based on the causes of action set forth below. In addition, Plaintiff seeks an order enjoining BMW's conduct; directing it to inform Class Members that repair and/or replacement of the Low-Pressure Fuel Pump is covered under warranty; directing BMW to provide warranty coverage for the repair and replacement of defective Class Vehicle Low-Pressure Fuel Pump; compensatory damages; restitution; and punitive damages.

**PARTIES**

17)   Plaintiff Makele Hill ("Plaintiff") is a resident of Los Angeles County, State of California, and was at all times relevant residing therein. Plaintiff is the owner of a Class Vehicle, specifically, a 2017 BMW X4 xDrive 28i, VIN #

1   5UXXW3C36H0T80458 (the "Subject Vehicle").

2      18)  Defendant BMW of North America, LLC  is a Delaware limited liability

3   company with its principal place of business located in Woodcliff Lake, New Jersey.

4      19)  All acts and omissions of BMW's employees, agents, associates, partners,

5   parents, or subsidiaries as alleged herein occurred while they were acting within the

6   course and scope of their duties and BMW is therefore responsible to Plaintiff and

7   others under the doctrine of Respondeat Superior and/or other doctrines.

8                          **JURISDICTION AND VENUE**

9      20)  This Court has jurisdiction based on diversity of citizenship pursuant to 28

10  U.S.C § 1332(a).

11     21)  This is a civil action in which the matter in controversy exceeds the sum of

12  $75,000, exclusive of interest and costs.

13     22)  At least one member of the Class is a citizen of a State different from at least

14  one Defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A).

15     23)  The claims asserted by the putative class, when aggregated as required by 28

16  U.S.C. § 1332(d)(6), exceeds the sum of $5,000,000 within the meaning of 28 U.S.C.

17  § 1332(d)(2).

18     24)  The number of members of all putative classes alleged herein exceeds 100 in

19  number within the meaning of 28 U.S.C. § 1332(d)(5)(B).

20     25)  The primary defendants are not States, State officials, or other governmental

21  entities within the meaning of 28 U.S.C. § 1332(d)(5)(A).

22     26)  Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of

23  the acts or omissions giving rise to this claim occurred in the Central District of

24  California.

25     27)  This Court has supplemental jurisdiction over Plaintiffs' state law claims

26  arising under statutory or common law pursuant to 28 U.S.C. § 1367 because the

27  claims arise from a common nucleus of operative facts such that adjudication of both

28  state and federal claims furthers the interests of judicial economy.

**FACTUAL ALLEGATIONS**

28)  In order to understand the widespread effect of BMW's unlawful conduct, it is important to provide a detailed explanation of the relevant statutory provisions at issue.

29)  In September 1990, and pursuant to its broad authority to regulate and reduce vehicle emissions under Health and Safety Code §§ 43013(a) and 43205, the California Air Resource Board ("CARB") submitted, and the Legislature adopted, California Code of Regulations § 2035, *et seq*—otherwise known as the "Emission Control System Warranty Requirements for 1990 and Subsequent Model Year Passenger Cars, Light-Trucks, and Medium-Duty Vehicles."

30)  As alleged above at ¶ 3, 13 CCR § 2037(b)(2) requires manufacturers to provide warranty coverage for a period of 3 years or 50,000-mile for all "warranted parts." A component is classified as a "warranted part" if a defect in that part "would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate[.]" [13 CCR § 2037(b)(2)]. Importantly, this "warranted part" characterization is not altered by the fact that the primary function of the defective component may not be directly related to emissions control. [*Id*. at § 2035(c)(2)(B)].

31)  The reason why the defective component need not directly relate to emissions control—while still retaining its "warranted part" characterization—is because a defect in that particular component causes a chain reaction which results in a malfunction in the vehicle's on-board diagnostic emissions system ("OBDII") which, in turn, causes the MIL to illuminate. When the MIL illuminates, it necessarily indicates that there is an emissions-related problem.

32)  The MIL is a light located on the driver's side instrument panel which, when illuminated, is amber in color and displays either a "Check Engine/Powertrain" message; a "Service Engine/Powertrain Soon" message; or the International Standards Organization "engine symbol."

///

33)  The MIL serves to notify the driver of detected malfunctions in the vehicle's on-board diagnostic emissions system. In layman's terms, this means that when the MIL is illuminated, an emissions-related defect has been detected in the vehicle. However, the MIL does not illuminate unless the vehicle's OBDII has detected a defect which causes an increase in regulated emissions.

34)  Having dispensed with the definition of a "warranted part," we now turn to the definition of "high-priced" warranted parts.

35)  Pursuant to 13 CCR § 2037(c)(3), if an emissions-related component is determined to be "high-priced," then the manufacturer is statutorily required to extend its warranty from 3-years or 50,000-mile, to 7-year or 70,000 mile.

36)  A "high-priced warranted part" is defined as a warranted part whose individual replacement cost at the time of certification exceeds the cost limit established by the annual average nationwide urban CPI for the calendar year two years prior to the model-year for which the cost limit is being calculated. [13 CCR § 2037(c)(3)].

37)  Thus, to determine the cost limit for a high-priced warranted part in 2015, the calculation would need to utilize the annual average nationwide urban CPI for 2013.

38)  In calculating whether a particular part's individual replacement cost at the time of certification exceeds the cost limit, "the replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis." [13 CCR § 2037(c)(1)]. This calculation must utilize a price-point as would be charged "in the highest-cost metropolitan area of California." [13 CCR § 2037(c)(2)].

39)  This cost limit shall be calculated using the following equation:

$$\text{Cost limit } (n) = \$300 \text{ x } (CPI[n\text{-}2] / 118.3).$$

40)  Cost limit (n) is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

41)  If, upon conducting this calculation, the price of repair/replacement exceeds the CPI cost limit, the part is a "high-priced" warranted part, and the manufacturer is

CLASS ACTION COMPLAINT

1  statutorily required to extend warranty coverage for the part's repair or replacement
2  from three years or 50,000-mile, to seven year or 70,000-mile. [13 CCR §
3  2037(b)(3)].

### THE LOW-PRESSURE FUEL PUMP IS AN "EMISSIONS-RELATED" PARTS

6  42)  All Class Vehicles are equipped with what is known as an onboard diagnostic
7  system or OBDII. The system uses sensors to gather data which is evaluated using
8  OBDII fault code logic. If the OBDII logic determines that the data it receives is
9  outside of an acceptable range, a fault code is triggered which identifies the precise
10 defect causing the increase in regulated emissions.

11 43)  When BMW seeks certification of vehicles for distribution in California,
12 BMW is required, pursuant to 13 CCR § 1968.2, to provide CARB with all of
13 BMW's OBDII fault codes and the corresponding logic.

14 44)  Plaintiff is informed and believes, and based on such information and belief
15 alleges, that BMW has submitted to CARB what are known as "OBDII Summary
16 Tables" which contain all of the triggering OBDII fault codes. These "Summary
17 Tables" are submitted by BMW for every single one of their model vehicles that are
18 certified for sale in California—including the Class Vehicle.

19 45)  The Summary Tables BMW annually submits to CARB are intended to
20 identify which vehicle components are monitored by the OBDII, as well as the
21 acceptable ranges relating to the data gathered.

22 46)  The fault codes which trigger the OBDII system are then used by technicians
23 to determine precisely which part needs to be repaired/replaced. On the other hand,
24 the MIL is used to alert the driver of a defect. As previously mentioned, any defect
25 that triggers the MIL, or which causes the activation an emissions fault codes
26 identified by BMW in the OBDII Summary Tables, is an emissions-related defect.

27 47)  The OBDII Summary Tables, among other documents, identify the parts that
28 have not already been identified as emissions-related parts by BMW in its warranty

books but which, when defective, can or do trigger an emissions fault code and result in illumination of the MIL.

48)  Therefore, under the California emissions warranty, BMW is required to provide coverage for the repair/replacement of any defect that triggers a fault code identified by BMW in its OBDII Summary Tables, or which should have been identified in the OBDII Summary Tables, because such defects affect regulated emissions.

49)  Relevant to the instant case is that a defect in the Low-Pressure Fuel Pump will trigger emissions fault codes in the OBDII system and will also cause the MIL to illuminate.

50)  Furthermore, defects in the Low-Pressure Fuel Pump will cause the illumination of the check engine light.

51)  The foregoing framework and analysis addresses and precludes any potential "slippery slope" argument that every component on a motor vehicle could potentially be classified as "emissions-related." This litigation is not dependent on the assertion that "emissions-related parts" are defined as every part in the OBDII system. Rather, this litigation asserts that there should be California emissions warranty coverage for the parts, components, or systems whose defects trigger fault codes (1) which were identified or should have been identified in the OBDII Summary Tables; (2) which cause the illumination of the MIL; or (3) which cause the vehicle to fail a California smog check.

52)  The Low-Pressure Fuel Pump installed in Class Vehicles meets all of these requirements.

**THE LOW-PRESSURE FUEL PUMP IS A "WARRANTED PART"**

53)  The Low-Pressure Fuel Pump is a "warranted part" pursuant to 13 CCR § 2037(b)(2) because a defect or failure in the Low-Pressure Fuel Pump will cause the "MIL" light to illuminate; will cause the vehicle to fail a smog check; and will cause an increase in "regulated" greenhouse gas emissions.

54)  The Low-Pressure Fuel Pump affects regulated emissions because a Low-Pressure Fuel Pump that does not provide the proper amount of fuel pressure for the high-pressure fuel pump and ultimately the fuel injectors, will result in a vehicle having an improper gas to air mixture in the combustion chamber, resulting in misfires and an increase in emissions.

55)  The Low-Pressure Fuel Pump is a "warranted part" as defined by 13 CCR § 2037(b)(2) because a defect or failure in the Low-Pressure Fuel Pump will cause an increase in regulated emissions.

56)  The Low-Pressure Fuel Pump can alternatively be classified as a "warranted part" because a defect in the Low-Pressure Fuel Pump will cause the MIL to illuminate. And as previously alleged, the MIL only illuminates when the OBDII system has detected a tangible increase in regulated emissions. The OBDII uses sensors to gather data which is evaluated using the OBDII's fault code logic. If the OBDII logic determines that the data is outside of an acceptable range, a fault code is triggered—which means that the OBDII has identified a defect which increases regulated emissions.

57)  a defect in the Low-Pressure Fuel Pump causes both (1) an increase in regulated emissions; and (2) illumination of the MIL. But in the presence of an increase in regulated emissions or the illumination of the MIL, the vehicle will be completely incapable of passing a California smog check. Practically speaking, when the car fails a smog check, the car no longer can be legally driven on the road.

58)  Finally, BMW's own warranty book provided to customers, and BMW's correspondence relating to this case, as explained herein, admit that the Low-Pressure Fuel Pump is a part covered under the California emissions warranty.

**THE LOW-PRESSURE FUEL PUMP IS A "HIGH-PRICED" WARRANTED PART**

59)  A "high priced warranted part" is defined as a "warranted part" whose individual replacement cost at the time of certification exceeds the annual average

-10-

1  nationwide urban Consumer Price Index ("CPI") for the calendar year two years
2  prior to the model-year for which the cost limit is being calculated.

3  60)  In order to establish that the Low-Pressure Fuel Pump should be designated as
4  a "high-priced" warranted part, Plaintiff must first establish that the part is
5  "emissions related." Plaintiff has established the "emissions related" nature of the
6  Low-Pressure Fuel Pump. However, to briefly recap, the evidence is incontrovertible
7  that the Low Pressure Fuel Pump is a warranted part because it satisfies not one, not
8  two, but all three separate regulatory prerequisites for being classified as a
9  "warranted part."

10  61)  Specifically, the Low Pressure Fuel Pump is a "warranted part" because a
11  defect in this component (i) will cause the MIL to illuminate; (ii) will cause the
12  vehicle to fail a smog check; and (iii) will cause an increase in "regulated"
13  greenhouse gas emissions.

14  62)  Having dispensed with the issue of whether the Low-Pressure Fuel Pump is a
15  is a "warranted" emissions part, Plaintiff now turns to addressing why the Low-
16  Pressure Fuel Pump is also a "high priced" warranted emissions part.

17  63)  On March 15, 2016, CARB published Manufacturers' Advisory
18  Correspondence 2016-01 (MAC 2016). The MAC indicated that the cost limit for
19  model year 2017 vehicles was $600.00. This meant that if the retail parts and labor
20  cost to customers for diagnosing and replacing a defective part covered under the
21  California emissions warranty exceeded $600.00, the repair must be covered under
22  the 7-year or 70,000-mile California emissions warranty. The threshold relating to
23  Class Vehicles for determining if the 7-years or 70,000-mile California emissions
24  warranty coverage applies has never exceeded than $600.00.

25  64)  The retail cost, as defined by the California Code of Regulations, to diagnose
26  and replace a defective Low-Pressure Fuel Pump installed in a Class Vehicle has
27  always been more than $600.00.

28  ///

65) Further, under a section entitled "High-Priced Warranted Parts Cost Documentation in the Applications for Certification" the MAC makes explicit that "[m]anufacturers must submit in their applications for certification the documentation used to identify the high-priced warranted parts in accordance with 13 CCR §2037(c)(3), §2435(b)…[T]he documentation shall include all emission-related parts costing more than $490…(i.e., calculated cost limit minus $100) to replace…This documentation shall substantiate that the list includes all potential high-priced parts. The documentation shall include the estimated retail parts costs, labor rates in dollars per hour, and the labor hours necessary to replace the parts including standard diagnosis. If the labor hours being charged for customer-pay repairs are different from those specified by the manufacturer for warranty repairs, the manufacturer shall substantiate the labor hours specified. All applications and required documentation (i.e., high-priced warranted parts list, potential high-priced parts, and cost calculations) must be submitted using the California Air Resources Board's (CARB) Document Management System."

66) BMW has been using an incorrect methodology to determine if emissions-related components, such as the Low-Pressure Fuel Pump, are warranted parts and are high-priced parts.

67) By using an incorrect methodology which resulted in BMW failing to provide a 7-year 70,000-mile warranty for the Low-Pressure Fuel Pump as alleged herein, BMW has violated the UCL. And the Consumer Legal Remedies Act.

**BMW DOES NOT DISPUTE THAT THE LOW-PRESSURE FUEL PUMP INSTALLED IN THE CLASS VEHICLES IS A HIGH-COST PART COVERED PART UNDER THE CALIFORNIA EMISSIONS WARRANTY**

68) On June 3, 2022, Plaintiff took the Subject Vehicle to Lithia BMW of Sherman Oaks, located at 5201 Van Nuys Boulevard, Sherman Oaks, California 91401 ("Lithia"). At all times relevant, Lithia was a BMW factory authorized repair facility. Plaintiff took the Subject Vehicle to Lithia because the fuel system warning

came on, the Subject Vehicle lost power and because the subject vehicle stalled. Lithia scanned the Subject Vehicle and found fault codes 481B00 and 481B03. It is Plaintiff's information and belief that these fault codes are OBDII fault codes which would trigger a MIL. Lithia diagnosed that the Subject Vehicle's Low-Pressure Fuel Pump and the Subject Vehicle's fuel pump control unit were defective. Lithia advised Plaintiff that the repairs would cost a total of $1,938.30, and that Plaintiff would have to pay out of her own pocket for the repairs. No California emissions warranty coverage was extended. Plaintiff declined to have Lithia perform the repairs.

69)  Plaintiff subsequently took the Subject Vehicle to A Plus Automotive, located at 10217 Canoga Avenue Chatsworth, California 91311 ("A Plus"). A Plus repaired the Subject Vehicle by replacing the Low-Pressure Fuel Pump.

70)  Plaintiff subsequently retained counsel. On August 8, 2022, Plaintiff's counsel sent BMW a letter pursuant to the Consumer Legal Remedies Act, advising BMW that it should have provided 7-year 70,000-mile warranty coverage to perform the repairs recommended by Lithia, because the repairs were high cost and that California emissions warranty coverage applied to the defects.

71)  On October 25, 2022, The Law Office of Abtin Amir, PC ("Defense Counsel"), forwarded correspondence to Plaintiff's counsel. Defense Counsel advised Plaintiff's counsel that Defense Counsel represented BMW regarding Hill's claim that the proposed repairs outlined by Lithia should have been covered under the 7-year or 70,000-mile California emissions warranty. Defense counsel wrote, "*Plaintiff's letter alleges BMW of Sherman Oaks improperly determined the EKPS repair as non-warranty and that BMW NA then 'refused to cover this repair under the California emissions warranty.' However, Plaintiff's letter fails to mention that Plaintiff drove the vehicle until it ran out of fuel, then continued to try to drive and start it without adding fuel, which is why the EKPS failed and required repairs in the first place, as well as the reason BMW NA denied the repairs under the emissions*

*warranty.*" Defense Counsel goes on to say, "*Plaintiff's letter further claims that BMW has 'failed to properly self identify which parts and warranty repairs should be covered by the statute, and has failed to advise its factory authorized repair facilities which parts, and repairs should be covered by the statute,' all while omitting the reason why Plaintiff's repairs in this instance were not covered under warranty. The repair records establish that Plaintiff continued to operate the Subject Vehicle after running out of fuel, resulting in Plaintiff damaging the EKPS. Thus, the EKPS repair was properly denied coverage under the emissions warranty as outside influence as a result of Plaintiff's misuse of the Subject Vehicle*." Finally, Defense Counsel states, "*With regard to the assertion that the repair to the EKPS should have been covered under the outstanding Emissions Warranty, BMW NA reasserts that damage to the vehicle caused by the Plaintiff (as is the case here) is not covered under this warranty either. As is evidenced by the repair order dated June 3, 2022, the fault codes are consistent with Plaintiff running out of fuel, and continuing to try to drive the vehicle. As has already been explained, this resulted in the vehicle stalling and not restarting. This, in turn, resulted in damage to the fuel pump (EKPS) because the pump ran dry due to not having sufficient fuel to properly lubricate itself. As such, BMW NA properly denied coverage in this instance.*"

72)   Defense Counsel's letter, which was specifically drafted by Defense Counsel to address Plaintiff's claims that warranty coverage was denied because BMW had not identified the Low-Pressure Fuel Pump as being a part covered by the 7-year or 70,000-mile emissions warranty, makes very clear that the repairs needed were necessary due to misuse by Plaintiff, and that the misuse was, "*the reason why BMW NA denied he repairs under the emissions warranty*."

73)   The logic of Defense Counsel's letter is very clear. If there was no misuse by Plaintiff, coverage would have been provided under the 7-year or 70,000-mile California emissions warranty.

///

74)   There are two problems with Defense Counsel's letter. First, the assertion that coverage was denied as a result of misuse by Plaintiff is a pretext designed to explain away the reason why coverage was denied, which was that BMW did not actually provide 7-year or 70,000-mile California emissions warranty coverage for the Low-Pressure Fuel Pump installed in the Class Vehicles. Second, although the warranty book that BMW provided to customers relating to the 2018 BMW X3 and X4 does indicate that there is coverage for the Low-Pressure Fuel Pump, the warranty books that BMW provided to customers relating to the Class Vehicles indicated that BMW does not provide 7-year or 70,000-mile warranty coverage for the Class Vehicles. Simply put, BMW did not provide 7-year or 70,000-mile California emissions warranty coverage for the Low-Pressure Fuel Pump installed in the Class Vehicles.

75)   Furthermore, Defense Counsel's letter indicates that Plaintiff misused her vehicle by, "*continuing to try to drive and start the vehicle with a completely empty fuel tank results in the fuel pumps failing because they rely on fuel for lubrication*." This explanation regarding the purported abuse is flawed for several reasons. First, there is nothing in the owner's Manual for the Subject Vehicle which states that it is a misuse of the Subject Vehicle to drive the Subject Vehicle when it is low, or out of gas. Second, Plaintiff disputes Defense Counsel's assertion that she continued to try to drive and start the Subject Vehicle with a completely empty fuel tank. Third, the repair records from Lithia are silent as to any allegation that warranty coverage was otherwise applicable but denied due to misuse. Fourth, the explanation of misuse on its face seems implausible, because how could someone drive a vehicle that has a completely empty gas tank?

76)   Specifically with regard to the owner's manual for the Subject Vehicle which is posted online by BMW, page 91 states, "*The yellow indicator light illuminates, once the fuel reserve is reached*." There is no language indicating that operating the Subject Vehicle at the fuel reserve level will harm the Subject Vehicle. Page 92 reads, "*The Check Control Message appears continuously below a range of approx.*

-15-

CLASS ACTION COMPLAINT

1  *30 miles/50 km. NOTE With a range of less than 30 miles/50 km it is possible that the*
2  *engine will no longer have sufficient fuel. Engine functions are not ensured anymore.*
3  *There is a risk of property damage. Refuel promptly.*" There is no language
4  indicating that operating the Subject Vehicle with low fuel will harm the Subject
5  Vehicle. The only warning is that the Subject vehicle may run out of fuel, resulting in
6  a collision. Page 200 reads, "*NOTE With a range of less than 30 miles/50 km it is*
7  *possible that the engine will no longer have sufficient fuel. Engine functions are not*
8  *ensured anymore. There is a risk of property damage. Refuel promptly.*" Although
9  this is a warning that the engine may cease functioning if it runs out of fuel, and that
10 such an occurrence may result in loss of power and a collision, there is no indication
11 that running the vehicle on very low or no fuel can cause damage to the fuel pump.
12    77)  The repair or replacement of warranted parts still within the warranty period
13 must be performed at no charge to the vehicle or engine owner, except under
14 circumstances specified in the warranty regulations. (Cal. Code Regs., tit. 13, § 2037,
15 subd. (d)(4).) Manufacturers may not deny a warranty claim that would otherwise be
16 covered under the California vehicle emissions warranty requirements unless the
17 manufacturer can prove both of the following: (a) the vehicle or engine has been
18 abused, neglected, improperly maintained, or has unapproved modifications, and (b)
19 that such abuse, neglect, improper maintenance, or unapproved modification was the
20 direct cause of the need for the repair or replacement of the part. (Cal. Code Regs.,
21 tit. 13, §§ 2037, subd. (i), 2039.) BMW, having been caught with a warranty book
22 and warranty policy which clearly provides a non-compliant warranty, is
23 conspicuously attempting to raise a defense of misuse as a factually unsupported
24 pretext to avoid very clear liability for BMW's failure to comply with the California
25 emissions warranty.
26    78)  BMW's own warranty books and its written response to correspondence
27 relating to Plaintiff's claims admit that the Low-Pressure Fuel Pump is a part that
28 should be covered under the California emissions warrant. A review of BMW's

warranty book provided to customers relating to the 2018 BMW X3 and 2018 BMW X4 indicate that there is 7-year 70,000-mile warranty coverage for the "Fuel Pump [Supply Module]" for the Class Vehicles. Unfortunately, BMW's warranty book and BMW's warranty policy does not provide 7-year 70,000-mile California emissions warranty coverage for the Low-Pressure Fuel Pumps installed in the Class Vehicles.

79)  Furthermore, as explained herein, when confronted by this issue, BMW has not denied that the Low-Pressure Fuel Pump is covered under the California emissions warranty. When confronted, BMW also does not deny that the Low-Pressure Fuel Pump should be covered by the 7-year 70,000-mile California emissions warranty. Actually, BMW's own warranty books supplied to customers of 2018 BMW X3 and X4 vehicles acknowledges coverage. Instead, BMW, while refusing to acknowledge that it has advised its customers in the Class Vehicles' warranty books that the Low-Pressure Fuel Pump is not covered for 7-years or 70,000-mile, and while refusing to acknowledge that it has a non-compliant warranty policy, attempts to blame Plaintiff for the failure of her Low-Pressure Fuel pump and for the denial of coverage.

## ALLEGATIONS RELATED TO THE GENERALLY UNLAWFUL NATURE OF BMW'S CONDUCT

80)  At all times relevant, for each new motor vehicle intended to be distributed by BMW in the State of California, at the time of distribution, BMW has purported to accurately notify CARB of the parts which should be covered as emissions-related parts, also known as "warranted parts."

81)  Furthermore, for each new motor vehicle intended to be distributed by BMW in the State of California BMW has purported to accurately notify CARB of the parts which should be covered under both the 3-year or 50,000-mile and 7-year or 70,000-mile California emissions warranties.

82)  For each new vehicle intended to be distributed by BMW in the State of California, at the time of distribution, BMW has purported to provide accurate

written warranty documents accompanying the sale of its vehicles—including that
these warranty documents accurately identify all of the vehicle's parts that are
covered under the 3-year or 50,000-mile California emissions warranty, as well as
the extended 7-year or 70,000-mile California emissions warranty.

83) BMW has engaged in a systematic business practice where, at the time of sale
of its motor vehicles and thereafter, it intentionally omits from its warranty booklets,
and in resources provided to its dealerships, a significant number of parts which
should be identified as emissions related warranty parts covered under the 3-year or
50,000-mile or 7-year or 70,000-mile statutory emissions warranty.

84) To be sure, BMW does properly classify some of its parts as being covered
under either a 3-year or 50,000-mile or 7-year or 70,000-mile warranty, but it does
not fully disclose or classify all of the parts which are entitled to this statutory
coverage.

85) Consequently, when consumers present their BMW vehicles for repair at an
authorized repair facility, BMW fails to provide coverage under the 3-year or
50,000-mile California emissions warranty or the 7-year or 70,000-mile extended
statutory emissions warranty for repairs which should have been covered under these
emissions warranties.

86) California consumers have thus been forced to pay out-of-pocket for repairs
which, by operation of law, should have properly been paid for by BMW.

87) BMW engages in this misconduct in order to reduce the amount of money that
it has to pay out on warranty-related repairs and warranty claims.

88) If BMW had simply identified all of the warranted parts and high-priced
warranted parts that should be correctly identified as such, then BMW dealerships
would have unquestionably conducted repairs for these parts under warranty, and
Plaintiff and other California consumers would never have been injured.

89) BMW's failure and refusal to properly identify the parts which should have
been classified as warranted parts and "high-priced" warranted parts is clear violation

1  California Business and Professions Code section 17200, et seq. (the "UCL") and the
2  Consumer Legal Remedies Act, intended to minimize the amount of money that
3  BMW has to pay out in warranty claims.

4  90)  Plaintiff and other BMW customers have suffered damage and lost money or
5  property as a result of BMW's wrongful conduct.

6  91)  Plaintiff's theory does not depend on the premise that CARB was deceived by
7  the information that BMW submitted, and Plaintiff is not accusing CARB of
8  mismanagement or blaming CARB for BMW's inaccuracy. BMW alone is
9  responsible for selecting and identifying to CARB the parts that BMW has
10 unilaterally identified as warranted parts and "high-cost emissions warranty parts" as
11 a prerequisite to its application for vehicle certification.

12              **FACTUAL ALLEGATIONS RELATED TO PLAINTIFF**

13 92)  On or around February 7, 2021, Plaintiff purchased the Subject Vehicle. The
14 Subject Vehicle was purchased by Plaintiff in the state of California and registered in
15 the state of California.

16 93)  At the time Plaintiff purchased the Subject Vehicle, it was accompanied by the
17 remainder of the California emissions warranty.

18 94)  On June 3, 2022, Plaintiff took the Subject Vehicle to Lithia BMW of
19 Sherman Oaks, located at 5201 Van Nuys Boulevard, Sherman Oaks, California
20 91401 ("Lithia"). At all times relevant, Lithia was a BMW factory authorized repair
21 facility. Plaintiff took the Subject Vehicle to Lithia because the fuel system warning
22 came on, the Subject Vehicle lost power and because the subject vehicle stalled.
23 Lithia scanned the Subject Vehicle and found fault codes 481B00 and 481B03. It is
24 Plaintiff's information and belief that these fault codes are OBDII fault codes which
25 would trigger a MIL. Lithia diagnosed that the Subject Vehicle's Low-Pressure Fuel
26 Pump and the Subject Vehicle's fuel pump control unit were defective. Lithia
27 advised Plaintiff that the repairs would cost a total of $1,938.30, and that Plaintiff
28 would have to pay out of her own pocket for the repairs. No California emissions

1  warranty coverage was extended. Plaintiff declined to have Lithia perform the
2  repairs.

3  95)  Plaintiff subsequently took the Subject Vehicle to A Plus Automotive, located
4  at 10217 Canoga Avenue Chatsworth, California 91311 ("A Plus"). A Plus repaired
5  the Subject Vehicle by replacing the Low-Pressure Fuel Pump. Plaintiff paid $836.39
6  out of her own pocket for the repairs.

7  96)  The cost of the diagnosis and repairs relating to the Low-Pressure Fuel Pump
8  should have been covered and paid for by BMW under the 7-year or 70,000-mile
9  California emissions warranty. This is because, pursuant to 13 CCR § 2037(c), the
10  Low-Pressure Fuel Pump should have been identified as a high-priced emissions
11  part, and the parts relating to that repair should have been covered under section
12  2037(c). BMW failed to provide 7-year or 70,000-mile California emissions
13  warranty coverage for the Low-Pressure Fuel Pump installed in the Class Vehicles.
14  As a result, Plaintiff had to pay $836.39 out of her own pocket to get the Subject
15  Vehicle repaired at A Plus Automotive.

16  97)  Plaintiff is informed and believes, and based on such information and belief
17  alleges, that BMW's failure to classify the Low-Pressure Fuel Pump as a covered
18  part under the California emissions warranty was an intentional omission by BMW
19  designed to limit its warranty exposure.

20  98)  Plaintiff is informed and believes, and based on such information and belief
21  alleges, that Plaintiff's experience is just one of many examples of BMW's scheme
22  to avoid providing a true and comprehensive list of all parts which should be covered
23  under either a 3-year or 50,000 mile or 7-year or 70,000-mile California emission
24  warranty.

25  99)  The details of how BMW actually applied the CCR cost limit formula with
26  respect to the Low-Pressure Fuel Pump are exclusively within BMW's possession—
27  as is the information regarding what other parts BMW improperly omitted from its
28  list of parts entitled to coverage under the California emissions warranty.

100) As evidenced by Plaintiff's own experience, when BMW vehicles are presented to BMW dealerships for repairs which should be covered under the 3-year or 50,000-mile or 7-year or 70,000-mile California emissions warranty, BMW refuses to provide coverage under the emissions warranty.

101) In this case, Plaintiff presented the Subject Vehicle to a BMW authorized repair facility for repairs prior to the end of the 7-year or 70,000-mile California emissions warranty period for high-priced emissions parts. But instead of conducting these repairs under warranty as required by California law, BMW intentionally and unlawfully denied warranty coverage for the Low-Pressure Fuel Pump—a "high-priced" emission part which should have been covered under the 7-year or 70,000-mile California emissions warranty.

102) The reason that Plaintiff was charged for said repairs was not the result of an individual oversight by Lithia in failing to identify the repairs as being covered under the 7-year or 70-mile California emissions warranty. Instead, Plaintiff was denied warranty coverage because BMW, in a systematic and organized attempt to increase profit, deceptively omitted from warranty booklets and internal dealership literature those parts which should have been identified as "high-priced" warranted parts entitled to extended statutory coverage.

103) Pursuant to 13 CCR § 2037(c)(1)(B), BMW is required by law to identify "high-priced warranted parts…which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

104) BMW intentionally failed to identify all said components in order to increase profit vis-à-vis reducing the amount of money it spends on warranty-related repairs.

105) If BMW had complied with California law and properly identified all the parts which should have been identified as "high priced," then BMW dealerships would properly provide warranty coverage for said high-priced warranted parts, and Plaintiff would never have paid out-of-pocket for repairs which were covered under warranty.

106) Furthermore, BMW's failure to tender extended statutory warranty coverage for repair/replacement of the Low-Pressure Fuel Pump has resulted in Plaintiff and the Class paying more for Class Vehicles than they are actually worth. More specifically, Class Members paid for vehicles that purported to provide warranty coverage for all "warranted parts" and "high-priced" warranted parts—including but not limited to the Low-Pressure Fuel Pump. However, BMW did not include these parts as being covered under the California emissions warranty.

107) BMW's refusal to articulate in its written warranty booklets that the Low-Pressure Fuel Pump was covered under the California emissions warranty directly resulted in BMW's unjust enrichment and a tangible detriment to Plaintiff and the Classes because a compliant warranty has a tangible and ascertainable economic value to Class Members.

108) Class Members were supposed to be provided with warranty coverage in conformity with BMW's California emissions warranty obligations but were never provided such coverage. Instead, BMW provided a deficient warranty which does not cover the Low-Pressure Fuel Pump under the California emissions warranty—even though BMW was lawfully obligated to provide coverage for the Low-Pressure Fuel Pump.

109) Accordingly, the non-compliant warranty provides Class Members with tangibly less coverage than they paid for. Not only are Class Members not getting what they paid for, but because BMW has wrongfully refused to extend coverage for repair/replacement of these parts, Class Members are required to incur the additional expense of paying out-of-pocket for a repair which should have been fully covered under warranty. What makes BMW's conduct so egregious is that Class Members, in purchasing Class Vehicles, necessarily paid for a vehicle which included statutory warranty coverage, but what they actually got is a car without such coverage.

110) Class Members were entitled to a compliant California emissions warranty but were provided with a deficient warranty. As a result, BMW has been unjustly

enriched by providing a deficient warranty which reduced BMW's costs, and Class Members have been damaged by not receiving the warranty that they were legally entitled to receive.

111)  In fact, irrespective of whether repairs were performed to the Low-Pressure Fuel Pump, Class Members were still sold cars which were worth less than what Class Members actually paid for them by virtue of BMW's systematic failure to tender coverage under a statutory warranty which statutorily covers the Low-Pressure Fuel Pump.

112)  BMW's conduct violates California Business and Professions Code section 17200, et seq. (the "UCL") and the Consumer Legal Remedies Act.

113)  Plaintiff and other Class Members have suffered damage as a result of BMW's wrongful conduct as alleged herein and therefore have standing.

## CLASS ACTION ALLEGATIONS

114)  Plaintiff brings this action on her own behalf, as well as on behalf of all Class Members similarly situated, pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(1), (2) and/or (3) and/or (c)(4).

115)  Plaintiff reserves the right to redefine the Class and Subclasses and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

116)  BMW's California emission warranty applies to vehicles purchased and registered in States which, in the year the vehicle was distributed, had adopted the California Emissions Warranty, i.e., "Reg. 177 States" or "Section 177 States".

117)  In 1977, Congress added Section 177 to the Clean Air Act which allowed other states to "adopt and enforce" vehicle emissions standards which are identical to those in California.

118)  The purpose of Sections 209 and 177 is to limit mobile source emissions standards to those adopted either by (1) the federal government or (2) California. Reg 177 thus prohibits states from taking any action that would create, or have the effect

of creating, a "third vehicle" subject to emission control requirements that differed from those set by either the federal government or California. [See, 42 U.S.C. § 7507].

119)  One of the "control requirements" associated with Reg 177 states is that each manufacturer of new vehicles which are sold, leased, offered for sale, offered for lease, or registered in a Reg 177 State shall warrant it will provide warranty coverage in a manner which is identical to the manner set forth in 13 California Code of Regulations §§ 2035 through 2041.

120)  BMW's emissions warranty representations pursuant to Reg. 177 arises out of California law, and because California law must be applied outside of California in each of these Reg. 177 States, BMW's conduct was necessarily intended to have effects outside of California because said conduct was intended to be directed at the Classes in those States that BMW chose to include by the express terms of the California emissions warranty.

121)  Under these unique circumstances, California has a specific interest in regulating conduct outside of California when that conduct specifically invokes California emissions requirements and California emissions regulations. Specifically, California has an interest in preventing illegal practices that involve breaches of a California emissions warranty law that BMW has chosen to invoke in Reg. 177 States outside of California.

122)  As Defendant seeks to apply the California emission warranty to members of the Classes and vehicles outside of California, members of the Classes in those States likewise should be included in a claim that seeks to vindicate their rights under that same warranty in California and should have the ability to have their rights under that warranty asserted in California and pursuant to California law.

123)  BMW's own express application of the California emissions warranty constitutes a sufficient connection between California and out-of-state potential Class Members. Further, BMW's misconduct, namely, BMW's failure to identify all

emissions-related, high-priced warranted parts to CARB, a California regulator, occurred in California, and even out-of-state purchasers were harmed by BMW's conduct that occurred in California. BMW failed to disclose, in its submissions to CARB, the parts that are properly covered by the California emissions warranty, including, but not limited to, the Low-Pressure Fuel Pump.

124) BMW is solely responsible for selecting and identifying to CARB all of the parts that should be classified as emissions warranted parts, and high-priced warranted parts, and BMW failed to include the Low-Pressure Fuel Pump and other components.

125) Californians and out-of-state potential Class Members in the additional States covered by the California emissions warranty suffered an identical harm—they were forced to pay the costs of Low-Pressure Fuel Pump diagnosis, repair, or replacement, which should have been covered under the California emissions warranty, and were provided with warranties which were less valuable than the warranties they were legally entitled to at the time they purchased or leased their Class Vehicle.

126) Under these unique circumstances, California has the greater interest in applying California's consumer laws to enforce compliance with the California Emissions Warranty than any other State may have in using their consumer laws to enforce the same Regulation.

127) California has a specific interest in regulating conduct outside of California when that conduct invokes California emissions requirements and regulations, and California has an interest in preventing illegal practices that involve breach of California emissions law that BMW has chosen to invoke outside of California in the specific States covered. California also has a supreme interest in applying its own consumer protection laws in ensuring that the California emissions warranty is properly interpreted and applied wherever BMW has chosen to invoke it.

128) Under the facts of this case, the law of California should be applied because California's interest would be impaired if its consumer laws to enforce the California

emissions warranty were subordinated to consumer laws of the other States. Other jurisdictions' interests in applying their own consumer protection laws to their own residents do not strongly outweigh the interest California has in applying its consumer protection laws to enforce the California emission warranty with respect to the specific potential out-of-state members of the Classes identified herein.

129) Therefore, the Classes alleged herein include persons who purchased or leased Class Vehicles that are registered in States other than California.

130) There is sufficient similarity among all the Class Vehicles and BMW's conduct as defined herein in that, among other things, all of the vehicles in the proposed Classes are subject to the same California emissions warranty. BMW has acted in a uniform manner with respect to all Class Vehicles by failing to properly cover  Low-Pressure Fuel Pump in the Class Vehicles as required under the California emissions warranty and as described herein.

131) Accordingly, Plaintiff's proposed Class and Subclasses consist of and are defined as follows:

California Class and Subclass:

> All persons in the State of California who have been owners or lessees of Class Vehicles and whose Low-Pressure Fuel Pumps are not covered for 7-years or 70,000-mile (the "California Class").

> All persons in the State of California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to defective Low-Pressure Fuel Pumps which occurred prior to 7-years or 70,000-mile (the "California Out-of-Pocket Subclass").

Reg. 177 Class and Subclass:

> All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California emissions warranty (i.e., "Reg. 177 States" or "Section 177 States) and whose Low-Pressure Fuel Pumps are not covered for 7-years or 70,000-mile (the "Reg. 177 Class").

All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) and who have paid for repairs and parts pertaining to defective Low-Pressure Fuel Pumps which occurred prior to 7-years or 70,000-mile (the "Reg. 177 Out-of-Pocket Subclass").

Excluded from the Classes and Subclasses are BMW, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing. Also excluded are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

132) Plaintiff's primary goal on behalf of the Classes is to obtain injunctive relief requiring BMW to comply with the California emissions warranty and declaratory relief with respect to the proper interpretation of the California emissions warranty and BMW's obligations pursuant to the CCRs and the California emissions warranty.

133) Plaintiff's claim for monetary relief is secondary to the claim for injunctive or declaratory relief. Even in the absence of possible monetary recovery, Plaintiff would bring this action to obtain the injunctive and declaratory relief sought. Any monetary relief that would flow to the members of the Classes would be ancillary to the injunctive or declaratory relief obtained.

134) On behalf of the members of the Classes, Plaintiff seeks declaratory judgment/relief pursuant to 28 U.S.C. section 2201 *et seq.* as to, *inter alia*, (1) that the Low-Pressure Fuel Pump in the Class Vehicles is an 'emissions-related part" and high-priced" warranty part; (2) that BMW has used, and continues to use, the wrong or incorrect standards for identifying "emission-related" parts and "high-priced warranty parts" under the California emissions warranty; (3) that BMW failed, and continues to fail, in properly identifying and warranting under the California emissions warranty all of the parts, components, or systems—in addition to the Low-Pressure Fuel Pump—that should have been properly covered for emissions-related

defects; and/or, (4) that Plaintiff and members of the Classes are entitled to warranty coverage under California emissions warranty for all BMW vehicle parts not properly identified as warranted parts under the California emissions warranty as described or defined herein.

135) On behalf of the members of the Classes, Plaintiff seeks reimbursement or restitution for the out-of-pocket expenses, including diagnostic fees for amounts wrongfully paid by Plaintiff and members of the Classes relating to repairs that should have been covered by the BMW's California emissions warranty during the Class periods. Plaintiff's claim for restitution is distinct from her claim for damages. The damages claim seeks, *inter alia*, the diminished value of a California emissions warranty that does not cover all parts that should properly be included in the California emissions warranty.

136) Moreover, Plaintiff does not seek the same sum in restitution as she seeks in damages, and the two remedies do not compensate for the same harm. The restitutionary remedy, which seeks out of pocket reimbursement, will not compensate Plaintiff and members of the Classes for damages incurred due to the Class Vehicles having a California emissions warranty that has less value because the warranty does not properly cover all parts that should properly be covered under the California emissions warranty and will not compensate for the excess amounts and profits that BMW pocketed due to avoiding paying warranty claims that should have been covered under the California emissions warranty.

137) Further, the harm suffered by Plaintiff and members of the Classes and perpetrated by BMW is not adequately compensable with damages. The entire purpose of the California emissions warranty is to protect the environment. The California emissions warranty was enacted by the State of California to restrict harmful greenhouse gasses being emitted from gasoline and hybrid gasoline engines. The fundamental purpose of the emissions requirements is to reduce emissions, limit fuel consumption, and increase fuel efficiency, by forcing manufacturers to repair

1  and/or replace failed emissions-related vehicle components under warranty, thereby

2  decreasing greenhouse gas emissions, including carbon dioxide emissions.

3   138)  Indeed, motor vehicle use is the single greatest source of U.S. air pollution and

4  is the cause of more air pollution than any other human activity. Cars also produce

5  nearly two-thirds of all carbon dioxide emissions. Carbon dioxide content in the

6  atmosphere is closely linked to global temperature because the temperature of the

7  Earth is primarily determined by the balance between its absorption of energy from

8  the Sun, and the reflection of a portion of this energy back into space. Carbon

9  dioxide – a greenhouse gas – traps the energy and heat which would have otherwise

10  escaped back into space, and re-emits it, causing the warming of our atmosphere.

11  This process is known as the "greenhouse effect."

12   139)  Therefore, the State of California highly regulates emissions from gasoline and

13  hybrid gasoline engines, specifically greenhouse gas emissions. Yet, despite the

14  institution of these regulations designed to protect our air and our health, monitoring

15  shows that over 90 percent of Californians breathe unhealthy levels of one or more

16  air pollutants during some part of the year.

17   140)  Even with CARB's best efforts, in 2020, "there were 157 bad air days for

18  ozone pollution—the invisible, lung-searing gas in smog—across the vast, coast-to-

19  mountains basin spanning Los Angeles, Orange, Riverside and San Bernardino

20  counties. That's the most days above the federal health standard since 1997."

21  (Barboza, Tony (Dec. 6, 2020) L.A. Began 2020 With A Clean-Air Streak but Ended

22  with Its Worst Smog in Decades, Los Angeles Times

23  [https://www.latimes.com/42alifornia/story/2020-12-06/2020-laair-quality-southern-

24  california-pollution-analysis].)

25   141)  One of the most significant reasons that our environment is in such a state of

26  crisis is that vehicle manufacturers such as BMW are not following our very

27  thoroughly formulated rules.

28  ///

142) Accordingly, damages are inadequate to compensate for the foregoing harms caused by BMW's violation, and continuing violation, of the California emissions warranty. Money damages will not fix the harm caused by Defendant's violation of emissions laws, which requires equitable relief.

143) Further, BMW and car manufacturers should not be able to shirk their legal responsibilities simply by paying damages. Simply paying off consumers undermines the entire purpose of the California emissions warranty and will leave BMW in the position of being able to continue to violate the law and increase harmful vehicle emissions by just paying damages. Ironically, this result will leave Plaintiff and members of the Classes in an even worse position than by simply receiving monetary compensation alone.

144) Moreover, payment of damages does not ensure that the emissions parts will actually be repaired. That result will only be ensured by forcing BMW to cover the repair under the California emissions warranty as required.

145) Further, equitable relief is required because damages alone will not be sufficient for Class Members to identify all parts whose defects result in fault codes identified in the OBDII Summaries being triggered. BMW is the only party who has conducted the requisite analysis and therefore knows the fault code logic that would allow for identification of all required fault codes and which parts should properly covered under the California emissions warranty. In effect, Plaintiff's request for equitable relief is the only way to get BMW to do what it is required to do.

146) There are common questions of law and fact as to members of the Class and Subclasses that predominate over questions affecting only individual members, including, but not limited to:

   (a) Whether BMW has failed and is failing to acknowledge that the Low-Pressure Fuel Pump installed in the Class Vehicles should be covered under the 7 year or 70,000-mile California statutory emissions warranty

///

(b) Whether BMW's failure to comply with its statutorily imposed duty to provide a 7 year or 70,000-mile warranty for the Class Vehicles' Low-Pressure Fuel Pumps

(c) Whether Class Members were damaged as a result of purchasing/leasing a Class Vehicle with a less valuable warranty than to which they were entitled

(d) Whether BMW has engaged in and is engaging in a systematic business practice of failing to identify that the Low-Pressure Fuel Pump installed in the Class Vehicles should be covered under the 7 year or 70,000-mile California emissions warranty.

(e) Whether BMW's conduct is an unlawful and unfair business practice in violation of California Business & Professions Code section 17200, et seq.

(f) Whether BMW's conduct violates the Consumer Legal Remedies Act, California Civil Code section 1750, et seq.

(g) Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief regarding BMW's failure to identify that the Low-Pressure Fuel Pump installed in the Class Vehicles should be covered under the 7 year or 70,000-mile California emissions warranty.

(h) The appropriate remedy for BMW's violations of California law.

147) There is a well-defined community of interest in the litigation and the Class Members are readily ascertainable:

(a) **Numerosity**: The Class Members are so numerous that joinder of all Class Members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

(b) **Typicality**: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all

-31-

Class Members as demonstrated herein.

(c) **Adequacy**: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts or differences with any Class Member. Plaintiff's attorneys, the proposed Class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

(d) **Superiority**: The nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

## <u>FIRST CAUSE OF ACTION</u>

### VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200

### (Against BMW and Doe Defendants)

148) Plaintiff and the Class re-allege and incorporate by reference each and every allegation contained in the paragraphs above.

149) California Business and Professions Code § 17200 prohibits acts of unfair competition, including any "unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising."

150) As alleged herein, BMW has engaged in unlawful, fraudulent, and unfair business practices.

151) The UCL imposes strict liability. Plaintiff need not prove that BMW intentionally or negligently engaged in unlawful or unfair business practices – only

1   that such practices occurred.

2   152) Plaintiff, the Classes, and BMW are all considered "persons" as that term is

3   defined in Business and Professions Code § 17201.

4   153) BMW violated the UCL by knowingly and intentionally omitting from its

5   warranty booklets, concealing from CARB, concealing from the Class, and refusing

6   to provide coverage for those parts which should have been listed as covered under

7   California's 3-year or 50,000-mile and 7-years or 70,000-mile statutory emissions

8   warranty. BMW knew exactly which parts needed to be listed as covered under

9   California's emissions warranty but chose to purposely omit those parts in an attempt

10  to maximize profit by limiting the number of parts whose repair/replacement would

11  be covered under warranty.

12  154) BMW's unlawful, fraudulent, and unfair business acts and practices caused

13  Plaintiff and the Classes to suffer damage.

14  155) BMW's unlawful, fraudulent, and unfair conduct has also caused Plaintiff and

15  the Classes to pay out-of-pocket for repairs under false pretenses because these

16  repairs should have been covered under warranty.

17  156) As a direct and proximate result of BMW's acts and practices in violation of

18  the UCL, Plaintiff and the Classes have suffered injury in fact and lost money or

19  property as set forth above and will continue to do so.

20  157) As a direct and proximate result of BMW's acts and practices in violation of

21  the UCL, BMW has been unjustly enriched by providing a warranty that was worth

22  less than the value of the warranty had the warranty been compliant with BMW's

23  regulatory obligations.

24                                **Unfair Prong**

25  158) An act or act or practice is "unfair" if the consumer injury is substantial; is not

26  outweighed by any countervailing benefits to Class Members or to competition; and

27  is not an injury the Class Members themselves could reasonably have avoided. An

28  act or practice also is unfair if it offends an established public policy or is immoral,

unethical, oppressive, unscrupulous, or substantially injurious to Class Members. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions.

159) BMW's conduct, as alleged herein, constitutes an "unfair" business practice.

160) BMW's business practices are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to the Classes.

161) As alleged above, BMW engages and has engaged in a systematic business practice of failing to identify for consumers and its factory authorized repair facilities that the Low-Pressure Fuel Pump installed in the Class Vehicles are covered by the California emissions warranty. BMW does this in an effort to reduce the amount of money that it spends on warranty-related repairs knowing that it would be very difficult—if not impossible—for most consumers to discover this unlawful conduct. If BMW complied with California law and properly identified that the Low-Pressure Fuel Pump in the Class Vehicles should be identified as covered under an extended statutory emissions warranty, then BMW dealerships would properly provide warranty coverage for said parts.

162) Additionally, conduct is "unfair" because it is tethered to a legislatively declared policy of requiring BMW to categorize specific parts as "high-priced warranted parts" and issue a complaint warranty. [See, 13 CCR § 2037]. As stated herein, BMW failed to comply with these obligations.

163) Notwithstanding its statutory duty, BMW failed to classify that the Low-Pressure Fuel Pump and other parts are "high-priced warranted parts," and further failed to provide a 7-years or 70,000-mile warranty for the Low-Pressure Fuel Pump and other parts for the sole purpose of improperly limiting its warranty claims—without regard to the fact that consumers are being provided with a warranty that is less valuable than the warranty they are legally entitled to at the time of purchase or lease of their Class Vehicle.

164) Plaintiff and members of the Classes have wrongfully been denied warranty coverage at service centers throughout California and have suffered injury in fact and a loss of money or property as a result of BMW's unfair business acts and practices as set forth in detail.

165) Because the Low-Pressure Fuel Pump and other parts should have been classified as "high-priced warranted parts," BMW's business practice of omitting these parts from its warranty booklet, as well as denying extended warranty coverage for repair/replacement of these parts, is a violation of 13 CCR § 2037. For this reason, BMW's "unfair" conduct is tethered to a specific statutory provision.

166) As a result of its violation of this statute, Plaintiff and members of the Classes have wrongfully been denied warranty coverage at service centers throughout California and have suffered injury in fact and a loss of money or property as a result of BMW's unfair business acts and practices.

167) All of the acts and practices of BMW as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff and the Classes have suffered injury in fact and a loss of money or property as a result of BMW's unfair business acts and practices as set forth herein.

168) As a direct and proximate result of BMW's acts and practices in violation of the UCL, Plaintiff and the Classes have suffered damages.

169) BMW's conduct does not benefit Class Members or competition. Plaintiff and the Classes could have not reasonably avoided the injury suffered or the injury that will be suffered. BMW's conduct only benefits BMW itself.

170) The gravity of the consequences of BMW's conduct as described above outweighs the justification, motive, or reason therefor, is immoral, unethical, and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, or is substantially injurious

1    to the public, for the reasons set forth above.

2    171) BMW could have and should have furthered its legitimate business interests
3    by publicly disclosing those parts which were entitled to coverage under the
4    California emissions warranty.

5    172) BMW could have and should have furthered its legitimate business interests
6    by including in its warranty booklets those parts which were entitled to coverage
7    under the California emissions warranty.

8    173) To the extent that any definition of "unfair" requires a balancing test or
9    weighing various factors, such an inquiry is fact intensive and requires a full factual
10    record as to BMW's justification and motives for its conduct, and as to the impact of
11    BMW's conduct on Plaintiff and the Class.

12    174) BMW's acts of unfair competition as set forth above present a continuing
13    threat and will persist and continue to do so unless and until this Court issues
14    appropriate injunctive relief. Plaintiff and the Class also seek attorneys' fees and
15    costs.

16                                   **Deceptive Prong**

17    175) BMW has engaged in a systematic business practice of selling vehicles while
18    actively concealing those vehicle parts which are entitled to coverage under the
19    California emissions warranty as alleged herein.

20    176) BMW's misleading information and concealment as alleged herein was an
21    unlawful business practice and was specifically designed to induce Plaintiff and the
22    Classes into purchasing Class Vehicles under false pretenses.

23    177) BMW's misleading information and concealment as alleged herein was an
24    unlawful business practice and was specifically designed to induce Plaintiff and the
25    Classes into paying for repairs under false pretenses.

26    178) Said conduct is likely to deceive an ordinary consumer because, as alleged
27    herein, BMW has a statutory duty to disclose those parts which are entitled to
28    coverage under the California emissions warranty.

179) BMW is and was under a duty to not mislead and deceive Class Members because BMW is and was in a superior position to know the true state of facts.

180) The facts concealed and not disclosed by BMW are material. Had Plaintiff and the Classes known the true facts and had BMW been truthful, Plaintiff and the Classes would not have been damaged to the same extent and would have been able to avoid much of the damages they now seek to recoup through this lawsuit.

181) The facts concealed are, by their very nature, material facts that a reasonable person would have considered when deciding whether or not to purchase a vehicle or pay for repairs. Had Plaintiff and the Classes known that BMW refuses to provide warranty coverage for parts which are statutorily entitled to warranty coverage, they would not have purchased or leased Class Vehicles, or would have paid less to do so.

182) Had Plaintiff and the Subclass known that BMW was required to provide warranty coverage for parts which were unlawfully omitted from its warranty booklet, they would not have paid for these repairs.

183) BMW has, by its concealment and false statements, engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

184) BMW's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff and the Class also seek attorneys' fees and costs.

### Unlawful Prong

185) A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

186) The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

187) Pursuant to 13 CCR § 2037, it is categorically unlawful to fail to disclose, and fail to provide warranty coverage, for the repair/replacement of parts which were statutorily entitled to coverage under California's 3-years or 50,000-mile and 7-years

1  or 70,000-mile emission warranties.

2  188)  Under the same statute, it was categorically unlawful for BMW to fail to

3  provide warranty coverage for repair/replacement of the Low-Pressure Fuel Pump,

4  because the Low-Pressure Fuel Pump qualifies as a "high-price" warranted part.

5  189)  Notwithstanding the requirement that BMW issue a 7-years or 70,000-mile

6  warranty for all of its Class Vehicle parts entitled to such coverage, BMW failed to

7  provide such a warranty, and thus acted in violation of 13 CCR § 2037.

8  190)  Plaintiff is informed and believes, and based on such information and belief

9  alleges, that this failure extends beyond the Class Vehicles and the Low-Pressure

10  Fuel Pump.

11  191)  Because the Low-Pressure Fuel Pump should have been classified as a "high-

12  priced warranted part," BMW's business practice of denying extended warranty

13  coverage for its Low-Pressure Fuel Pump is a violation of 13 CCR § 2037. For this

14  reason, BMW's conduct is actionable under the "unlawful prong" of the UCL.

15  ### SECOND CAUSE OF ACTION

16  ### Violation of California Consumers Legal Remedies Act

17  ### (Cal. Civil Code § 1750, *et seq.*)

18  192)  Plaintiff and the Class re-allege and incorporate by reference each and every

19  allegation contained in the paragraphs above.

20  193)  BMW has violated Section 1770 of the California Consumers Legal Remedies

21  Act, Cal. Civ. Code Section 1750, et seq. (the "CLRA"). The violation results from

22  BMW's failure to keep its promise to the State of California, and members of the

23  Classes, including Plaintiff, that it would honor the terms of the BMW warranty, and

24  by doing so, that it would honor the terms of the California emissions warranty and

25  the CCR. Furthermore, the BMW warranty book provided by BMW to consumers,

26  including Plaintiff, specifically references the California emissions warranty, and

27  both inferentially and specifically represents that it will honor the terms of the CCR,

28  however BMW has refused, and continues to refuse to honor the terms of the CCR,

as stated herein.

194) Plaintiff is a consumer who was wrongfully required to pay for repairs which should have been paid for by BMW pursuant to the CCR. The Subject Vehicle was presented by Plaintiff for repairs at a BMW authorized repair facility, in compliance with the terms and conditions of the BMW warranty. The Subject Vehicle required repairs which should have been covered by the California emissions warranty pursuant to the CCR, based upon the Subject Vehicle's mileage and age. BMW wrongfully failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set forth herein. Thus, Plaintiff suffered damage.

195) BMW knows that it is violating the terms of the CCR, however BMW intentionally violates the CCR in order to save money. Plaintiff and members of the Classes are generally unaware of the terms and scope of the CCR, thus BMW is able to get away with said wrongful conduct. As a result, Plaintiff and members of the Classes have suffered damage. BMW engages in a systemic pattern of denying warranty claims under the CCR by failing to properly identify and provide coverage for all parts that should be covered under the California emissions warranty.

196) Plaintiff and members of the Classes have presented Class Vehicles to BMW authorized repair facilities for repairs that should have been covered under the California emissions warranty, but coverage has been wrongfully denied to them. As a result, Plaintiff and members of the Classes have thus suffered damage. Plaintiff brings this claim on behalf of Plaintiff and members of the Classes.

197) BMW's conduct in warranting, advertising, leasing, selling and distributing Class Vehicles in the State of California, while at the same time knowingly and wrongfully failing to honor the terms of the California emissions warranty, constitutes the following violations of Section 1770:

> (a)    BMW represents and has represented that Class Vehicles sold and leased have characteristics or benefits which they did not have (in violation of Section 1770(a)(5));

(b)  BMW has falsely represented that Class Vehicles sold and leased were of a particular standard, quality, or grade when they were of another (in violation of Section 1770(a)(7)); and,

(c)  BMW advertised Class Vehicles that have been sold and leased with the intent not to sell them as advertised (in violation of Section 1770(a)(9)).

198) Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a violation of the Consumer Legal Remedies Act may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other relief that the court deems proper.

199) Civil Code section 1781 provides that Plaintiff may pursue this case as a class action.

200) Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

201) Plaintiff is entitled to attorney fees pursuant to Civil Code section 1780(e).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against BMW as follows:

a) For an order certifying this case as a class action, appointing Plaintiff as the representative of the Classes and Subclasses, and appointing counsel for Plaintiff as Class Counsel

b) That the Court declare, adjudge, and decree that BMW is financially responsible for notifying all Class Members about the wrongful conduct set forth herein; that BMW's conduct as alleged herein violates the California emissions warranty laws because BMW has, among other things, used, and continues to use, the wrong or incorrect standards for identifying "emissions-related" parts under the California emissions warranty; BMW failed and is failing to properly identify and warrant under the California emissions warranty all of the parts, components or

systems that should have been properly covered for emissions-related defects as identified and limited as described herein, and/or that Plaintiff and the members of the Classes are entitled to warranty coverage under California emissions warranty for the Low-Pressure Fuel Pump in Class Vehicles under the California emissions warranty as described or defined herein; and an order requiring BMW to, *inter alia*, review its warranty books for all Class Vehicles and properly identify and warrant the Low-Pressure Fuel Pump and, on a going forward basis, use the proper standard for determining whether a part is "emissions-related" under the California emissions warranty

c) That the Court declare, adjudge, and decree that BMW is responsible for notifying all Class Members about the wrongful conduct set forth herein

d) That the Court declare, adjudge, and decree that BMW's failure to identify and warrant the Low-Pressure Fuel Pump in Class Vehicles pursuant to the California emissions warranty constitutes an unfair and unlawful business practice in violation of California Business and Professions, Civil Code sections 17200, *et seq.*

e) That the Court declare, adjudge, and decree that BMW's failure to identify and warrant the Low-Pressure Fuel Pump in Class Vehicles pursuant to the California emissions warranty constitutes a violation of the Consumer Legal Remedies Act, California Civil Code section 1750, *et seq.*

f) For declaratory relief pursuant to 28 U.S.C. section 2201 that BMW is in violation of, and must comply with, the California emissions warranty, namely, that BMW, *inter alia*, identify and cover the Low-Pressure Fuel Pump in Class Vehicles under the California emissions warranty

g) For an order declaring and enjoining BMW from further unfair and unlawful distribution, sales, and lease practices and compelling BMW to properly and fully identify that the Low-Pressure Fuel Pump in Class Vehicles is covered pursuant to the California emissions warranty. Further, BMW will provide restitution for amounts wrongfully paid by Plaintiff and Class Members relating to these repairs which should

have been covered by BMW under the California emissions warranty, as well as the amount by which consumers overpaid for the purchase or lease of their vehicle as a result of the truncated and noncompliant warranties provided to them at the time of purchase or lease

h) For an award to Plaintiff and the Out-of-Pocket SubClass Members of any repair costs they are owed

i) For the appointment of a receiver, as necessary, to receive, manage and distribute any and all funds from BMW and determined to have been wrongfully acquired by BMW as a result of violations of California Business & Professions Code sections 17200, *et seq.*

j) For an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5

k) For an award of attorneys' fees and costs, as otherwise allowed by law

l) Punitive damages

m) For an award of pre-judgment and post-judgment interest

n) For leave to amend the Complaint to conform to the evidence produced at trial; and

o) For all other relief as may be appropriate under the circumstances

Date: November 6, 2022                    **LAW OFFICE OF ROBERT STARR**

/s/ Robert Starr
Attorney for Plaintiff
Makele Hill

DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Fed. R. Civ. Pro. 38

Date: November 6, 2022                    LAW OFFICE OF ROBERT STARR

/s/ Robert Starr

CLASS ACTION COMPLAINT